MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 96
Docket:        Han-15-412
Submitted
 On Briefs:    May 26, 2016
Decided:       June 30, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## LOIS YOUNG

v.

## JOSEPH LAGASSE et al.

HUMPHREY, J.

[¶1]  Lois Young appeals from a judgment of the Superior Court (Hancock County, *R. Murray, J.*) finding that she had not met her burden of establishing that the transfer of her home to her former foster child, Joseph Lagasse, and his wife was a result of undue influence and was therefore voidable. Specifically, Young contends that the court erred by not applying a statutory presumption that a transfer of assets by an elderly, dependent person is a result of undue influence unless that person was represented by "independent counsel" at the time of the transfer.  Because the court did not err by declining to apply the statutory presumption, and because the record supports a finding that the transfer was not the result of undue influence, we affirm.

## I. BACKGROUND

[¶2]   On July 14, 2014, Young filed a complaint in the Superior Court claiming that her prior transfer of her home to Joseph and Andrea Lagasse created a presumption of undue influence under the Improvident Transfers of Title Act, 33 M.R.S. §§ 1021-1025 (2015), and should therefore be voided.[1]   A bench trial was held on July 22, 2015.

[¶3]   The court heard testimony from Young, from her attorney for the transfer and his paralegal, and from several of Young's family members and friends.  After hearing the evidence, the court stated,

> The issue before the [c]ourt . . . as raised in the complaint . . . is whether the [property transfer] was improvident transfer of title.  That is a specific statute in law which dictates what should occur, and what might be a challenge to such a transfer . . . . [When] an elderly person [transfers property] to one [with whom the elderly person is] in a confidential or fiduciary relationship [it] is presumed to be [a transfer] that is . . . the result of undue influence unless the elderly dependent person was represented in the transfer or execution by independent counsel.

The court further stated that "the critical aspect of this case [is] whether or not at the time of the transfer, Ms. Young . . . had the benefit of independent counsel to

---

[1]   The complaint also sought punitive damages for unlawful entry into Young's home and the removal of her personal property by the Lagasses.  The Lagasses were served, but they did not file a timely pleading; the court (*A. Murray, J.*) entered a default judgment in Young's favor on January 30, 2015. Counsel for the Lagasses then filed consolidated motions to set aside the default judgment and to file a late answer, alleging, inter alia, improper service of process.  The record does not clearly document if and when the default judgment was ever actually set aside.  However, the matter proceeded to trial and none of the parties raised this issue on appeal.

review with her what was happening at the time." The court found that Young was represented by independent counsel at the time of the transfer. The court also found that Young's attorney was not precluded from representing her in the real estate transaction even though he had previously represented Lagasse in a criminal matter. The court stated that it weighed Young's own testimony in light of events that occurred since the transfer that have affected her memory. Finally, because it found that Young had independent counsel, the court stated, "I do not find that the aspects of an improvident transfer have been proven by the plaintiff, and, accordingly, that transfer which occurred prior to Ms. Young's current incapacities will not be voided."

[¶4] Viewing the evidence in the light most favorable to the court's judgment, the record supports the following facts. *See Hero v. Macomber*, 2016 ME 4, ¶ 2, 130 A.3d 398. In June 2013, Lois Young, then eighty-two years old, met at least twice with attorney Steven Juskewitch, who had known Young for fifteen or twenty years and also knew her former foster child, Lagasse, because he was a former client.[2] Lagasse and his wife Andrea accompanied Young to Juskewitch's office for the second meeting on June 21, 2013,[3] but Juskewitch and

---

[2] Juskewitch represented Lagasse on an OUI charge in 2002 and may also have represented him on a 2004 assault charge.

[3] Although there was no direct testimony that Andrea Lagasse accompanied Young to Juskewitch's office, her signature is on the declaration that was signed at the office on that day.

4

his paralegal met with Young alone for over an hour and finalized a deed transferring her home to the Lagasses[4] as a gift.[5] Young intended to ensure a secure future for the Lagasses' son, whom she loved; at the time of the transfer, the Lagasses lived in a separate structure on Young's property. Juskewitch and Young discussed alternative options for executing her wishes and the consequences of a property transfer. Juskewitch described Young as being "bright-eyed and bushy tailed" and "very aware of her circumstances" during his interactions with her, and he testified that she appeared to understand what she was doing.

[¶5] After Young and Juskewitch met on June 21, the Lagasses joined them to sign the transfer tax declaration. The mortgage holder was not notified of the transfer,[6] and Young continued to pay the mortgage and the property taxes on the home. Sometime after the transfer, Young suffered a fall and/or a stroke and spent time in the hospital.[7] After this incident, she was less independent. Young could

---

[4] Due to a typographical error, Andrea's name was recorded on the deed as "Legasse."

[5] The transfer tax declaration claimed an exemption because the transfer was "from mother to son and daughter in law." However, Young never adopted Joseph Lagasse. Juskewitch was unaware that they were not legally mother and son and testified that the claimed exemption was not a knowing misrepresentation because Young and Lagasse "believed that they were mother and son, and had believed that, apparently, for a long, long time." On appeal, Young does not argue that this misrepresentation on the tax form provides a basis for voiding the transfer. We also note that Young's complaint states, "Joseph Lagasse is the son of Plaintiff."

[6] The mortgage holder, the First National Bank of Bar Harbor, was joined as a party pursuant to M.R. Civ. P. 19.

[7] During the pendency of this matter in the trial court, Young's niece was appointed as her guardian by the Hancock County Probate Court.

not remember making the transfer, but she stated that it was her desire to leave property for the Lagasses' son and admitted that she had problems with her memory since the post-transfer medical incident.

[¶6] The court entered judgment in favor of the Lagasses with respect to Young's improvident transfer claim and request for punitive damages.[8] Young timely appealed to us.

## II. DISCUSSION

[¶7] Young contends that the trial court erred by finding that the transfer of her property was not an improvident transfer within the meaning of the Improvident Transfers of Title Act. She argues (1) that the court erred by finding that Juskewitch was "independent counsel," and (2) that the totality of the evidence demonstrates that the transfer was the result of undue influence by the Lagasses.

[¶8] We review a trial court's factual findings for clear error. *Gordon v. Cheskin*, 2013 ME 113, ¶ 12, 82 A.3d 1221.

> A finding of fact is clearly erroneous if there is no competent evidence in the record to support it; if the fact-finder clearly misapprehends the meaning of the evidence; or if the finding is so contrary to the credible evidence that it does not represent the truth and right of the case.

---

[8] The court also ordered the Lagasses to reimburse Young for satellite television services that they used, based on an unjust enrichment theory. It appears that the television-related claim was not raised in the pretrial pleadings, but the Lagasses do not appeal from this portion of the judgment.

6

*Guardianship of Hailey M.*, 2016 ME 80, ¶ 15, --- A.3d --- (quotation marks and citations omitted). "Factual findings should not be overturned in an appellate proceeding simply because an alternative finding also finds support in the evidence," and "[w]e defer to the trial court's determination of witnesses' credibility and its resolution of conflicts in testimony." *Gordon*, 2013 ME 113, ¶ 12, 82 A.3d 1221 (quotation marks omitted). In addition, when the party with the burden of proof is appealing, as in this case, the appellant must show that the evidence compels a contrary finding. *See Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 10, 982 A.2d 339.

[¶9]   The Act "protects elderly individuals against making transfers of property as a result of undue influence." *McCollor v. McCollor*, 2014 ME 39, ¶ 11, 87 A.3d 761 (quotation marks omitted). It establishes a rebuttable presumption that certain transfers are a product of undue influence, and are thus voidable, providing,

> In any transfer of real estate or major transfer of personal property or money for less than full consideration or execution of a guaranty by an elderly person who is dependent on others to a person with whom the elderly dependent person has a confidential or fiduciary relationship, it is presumed that the transfer or execution was the result of undue influence, unless the elderly dependent person was represented in the transfer or execution by independent counsel.

33 M.R.S. § 1022(1). The only element of the presumption that the parties dispute is whether Juskewitch acted as "independent counsel" for Young.[9] "Independent counsel" is defined as "an attorney retained by the elderly dependent person to represent only that person's interests in the transfer." 33 M.R.S. § 1021(3). Young contends that "retained" essentially means "paid."

[¶10] We have not identified with specificity factors for determining whether an attorney was acting as "independent counsel" within the meaning of the Act, and the legislative history is not illuminating on this issue. However, we have affirmed a court's finding of an absence of "independent counsel" where the record disclosed only the bare fact that the attorney spoke with the elderly person. *See McCollor*, 2014 ME 39, ¶¶ 19-20, 87 A.3d 761. In this case, by contrast, Juskewitch testified that he met twice with Young before completing the transfer, including once for over an hour; that he advised her of the consequences and the finality of her decision; and that he believed she was aware of what she was doing.

---

[9] The statutory presumption only applies to transfers involving an "elderly *dependent* person." 33 M.R.S. § 1022(1) (2015) (emphasis added). "'Elderly person' means a person who is 60 years of age or older." *Id.* § 1021(2) (2015). "'Dependent,' with respect to an elderly person, means wholly or partially dependent upon one or more other persons for care or support, either emotional or physical, because the elderly person: (A) Suffers from a significant limitation in mobility, vision, hearing, emotional or mental functioning or the ability to read or write; or (B) Is suffering or recovering from a major illness or is facing or recovering from major surgery." *Id.* § 1021(1) (2015). At trial, no evidence was presented to establish that Young was "dependent" pursuant to the statutory definition at the time of the transfer. However, neither party raised this issue before the trial court or on appeal. "Confidential or fiduciary relationship" encompasses "[a] relationship between an elderly dependent person and a friend or neighbor." *Id.* § 1022(2)(H) (2015).

[¶11]  In addition, although the court did not expressly make a finding about whether Young "retained" Juskewitch, the evidence supports a determination that she did, in that she authorized him to represent her in the property transfer.  *See Black's Law Dictionary* 1509 (10th ed. 2014) (providing a definition of "retainer" as "[a] client's authorization for a lawyer to act in a case");[10] *see also Stromberg-Carlson Corp. v. State Tax Assessor*, 2001 ME 11, ¶ 9, 765 A.2d 566 ("When construing the language of a statute, we look first to the plain meaning of the language to give effect to the legislative intent.").

[¶12]  Young does not cite any authority for her contention that "retained" only means "paid," and her contention does not comport with the accepted practice that an attorney may be paid by a third party provided that, inter alia, the attorney represents only the interests of his or her direct client.  *See* M.R. Prof. Conduct 1.8(f).  There is no indication in the record that Young did not choose Juskewitch to represent her interests and effect her intent.  The court did not clearly err by finding that Juskewitch was representing Young's interests in the transfer and therefore that the statutory presumption did not apply.[11]

---

10   Black's Law Dictionary also provides a definition of "retain" as "[t]o hire; to engage for the provision of services (as by a lawyer, an accountant, an employee, etc.)." *Black's Law Dictionary* 1509 (10th ed. 2014).  This definition suggests that although retaining a lawyer may include the payment of a fee in return for services, that is not the term's exclusive meaning in all contexts.

11   We are also not persuaded by Young's argument that Juskewitch was incapable of serving as "independent counsel" to Young regarding the transfer because he had previously represented Lagasse in

[¶13] The court also did not err by finding that, in the absence of the statutory presumption, the transfer was not voidable. The court did not separately and explicitly find that there was no evidence of undue influence. However, because Young did not move for further findings of fact and conclusions of law, *see* M.R. Civ. P. 52(b), we assume that the trial court made all findings necessary to support its judgment, if those findings are supported by the record. *See Finucan v. Williams*, 2013 ME 75, ¶ 16, 73 A.3d 1056.

[¶14] The record establishes that Young met with Juskewitch twice, spoke with him outside the presence of the Lagasses for over an hour, communicated her awareness of what she was doing, and communicated to a friend her satisfaction with the transfer. The bulk of the evidence presented by Young concerned alleged controlling behavior and financial exploitation of Young by the Lagasses that began *after* the property transfer at issue and therefore does not compel a finding that the transfer itself was the product of undue influence. Finally, it was within the court's discretion to credit Juskewitch's testimony over Young's about her capacity on the day of the transfer, given that she admitted having problems with

---

criminal matters several years before. The fact that Lagasse called Juskewitch for help with a "no trespass order" after the transfer similarly does not change our analysis.

her memory caused by her health issues subsequent to the transfer.[12]  *See Gordon*, 2013 ME 113, ¶ 12, 82 A.3d 1221.

[¶15]  For the foregoing reasons, we affirm.

The entry is:

> Judgment affirmed.

**On the briefs:**

Ferdinand A. Slater, Esq., for appellant Lois Young

Joseph Lagasse, appellee pro se

Hancock County Superior Court docket number RE-2014-28
FOR CLERK REFERENCE ONLY

---

[12]  In her brief on appeal, Young raises as a second issue that the trial court erred by not evaluating the transfer under a theory of common law undue influence.  Common law undue influence actions are not abrogated by the Act, *see* 33 M.R.S. § 1024 (2015), but Young did not plead common law undue influence or raise this theory before the trial court.  Therefore, she has not preserved this claim, and we do not consider it.  *See Foster v. Oral Surgery Assocs., P.A.*, 2008 ME 21, ¶ 22, 940 A.2d 1102.