MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2016 ME 166
Docket:      BCD-15-363
Argued:      May 4, 2016
Decided:     November 8, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

HARRIS MANAGEMENT, INC., et al.

v.

PAUL COULOMBE et al.

SAUFLEY, C.J.

[¶1]  Paul Coulombe and two LLCs under his control—PGC1, LLC, and PGC2, LLC[1]—appeal from discovery orders entered in the Business and Consumer Docket (*Murphy, J.*) that required the disclosure of specific communications over the assertion that those communications were protected by the attorney-client privilege.  Coulombe contends that the court erred in determining that (A) Coulombe's communications with his attorney that included a third party were not privileged and (B) the crime-fraud exception to the attorney-client privilege applied to allow the disclosure of other communications between Coulombe and counsel.  We affirm the

---

[1]  According to the complaint, TPI, LLC, is the sole member of PGC1 and PGC2, and the sole member of TPI is the Paul G. Coulombe Trust, of which Coulombe is a trustee and beneficiary.

judgment except with respect to one communication that we conclude the trial court must consider further on remand.

## I. BACKGROUND

[¶2] In January 2014, Harris Management, Inc., and JJR Associates, LLC (collectively, "Harris"), filed a complaint against Coulombe, PGC1, and PGC2 in the Superior Court (Sagadahoc County). Although Coulombe and his LLCs removed the case to federal court based on diversity jurisdiction, the United States District Court for the District of Maine (*Singal, J.*) concluded that diversity was lacking and granted Harris's motion to remand the matter to the Superior Court. The parties then successfully applied to have the case transferred to the Business and Consumer Docket.

[¶3] As amended effective March 11, 2015, Harris's complaint alleged seven causes of action arising primarily from allegations that, in January, February, and March 2013, Coulombe had misrepresented his commitment to hire Harris Management, owned and operated by Jeffrey Harris, to manage the golf course at the Boothbay Country Club, which Coulombe was preparing to purchase at auction. Harris alleged that Coulombe made these misrepresentations in an effort to obtain nearby property from JJR Associates[2]

---

[2] According to the complaint, JJR Associates has three members—Jeffrey Harris, his brother, and his father.

at a discount, to prevent Harris from purchasing the Club itself, and to have Harris assist in initially setting up the golf course. Harris alleged the following causes of action: (I) fraudulent inducement, (II) fraudulent misrepresentation, (III) negligent misrepresentation, (IV) breach of contract, (V) promissory estoppel, (VI) unjust enrichment, and (VII) quantum meruit.

[¶4] Relevant here, Harris alleged that Coulombe, with assistance from his attorneys, Hawley Strait and John Carpenter, was secretly seeking a different golf course manager while Coulombe was simultaneously reassuring Harris that Harris was to manage the golf course. Harris alleged that it did not learn until March 2013—after ceasing independent efforts to purchase the Club, selling nearby JJR property to Coulombe at a discount, and beginning to manage Coulombe's golf course after Coulombe purchased the Club—that someone else, Dan Hourihan, would be hired as the manager of the course.

[¶5] In April 2015, the parties provided notices to the court of discovery disputes that required court resolution. The court (*Murphy, J.*) requested memoranda on the issue now on appeal—the applicability of the attorney-client privilege, *see* M.R. Evid. 502, to Coulombe's communications with his attorneys, some of which also included Coulombe's business associates. One such business associate was John Suczynski, a previous

4

long-time employee of Coulombe's former company who was later hired by PGC2 to be the general manager of the new Club. The parties filed memoranda with voluminous exhibits.

[¶6] Harris argued that it was entitled to discover the communications because the crime-fraud exception to attorney-client privilege applied. *See* M.R. Evid. 502(d)(1). Harris further argued that Coulombe's communications involving both counsel and Suczynski were not privileged because the inclusion of Suczynski, who was not a representative of Coulombe during the relevant time, destroyed the privilege.

[¶7] Coulombe and his LLCs argued that the crime-fraud exception cannot apply because Harris failed to establish a necessary element of fraud—that Harris, led by an experienced businessperson who had the advice of counsel, *justifiably* relied on Coulombe's representations. Coulombe and the LLCs further argued that the communications involving Suczynski were privileged because Suczynski was a representative of Coulombe or his businesses in speaking with counsel.

[¶8] The parties' exhibits included an affidavit from Coulombe explaining Suczynski's role in working with and for Coulombe; the parties' privilege logs; and some communications among Coulombe, Harris, Suczynski,

Hourihan, Carpenter, Strait, and Stephen Malcom, the president of the Knickerbocker Group—an architecture and construction firm alleged to have done business with Coulombe—from before and after Coulombe purchased the Club.

[¶9] The court entered an order on July 1, 2015, providing, in relevant part, that Coulombe must permit Harris to discover the communications among Coulombe, his counsel, and Suczynski. The court found that, although Coulombe and Suczynski had worked together for many years, "Suczynski did not become involved with Coulombe's golf course deal until March of 2013," with his role becoming much more clear after the terms of his employment were negotiated on March 14, 2013. The court found that, because no terms of employment had been decided before that date, and because there was no other evidence that Suczynski had authority before March 14, 2013, to make decisions as a representative of Coulombe or his companies, the communications among Coulombe, Suczynski, and Coulombe's attorneys before that date were not subject to the attorney-client privilege. The court ordered that other communications that were solely between Coulombe and his counsel, identified as privileged, would be reviewed *in camera*.

6

[¶10]  In early September 2015, the court ruled that specified items that it had reviewed *in camera* were discoverable because the crime-fraud exception to the attorney-client privilege applied.   Exercising caution regarding the release of those documents pending the possibility of appeal, the court noted that it was "reluctant to make specific reference to the documents" that persuaded it of the exception's applicability because of the possibility that Coulombe and his LLCs would appeal before disclosure.  The court found that the crime-fraud exception applied because there was sufficient evidence that (a) Coulombe had intentionally kept his plans for management secret from Harris until he had completed transactions that benefitted Coulombe and were detrimental to Harris, and (b) the attorney-client communications at issue were intended to facilitate or conceal this activity.

[¶11]   Coulombe appeals from both of the court's decisions requiring the disclosure of communications.[3]

---

[3]  Although Harris argues that the appeal from the July 2015 order should be dismissed because no final judgment has been entered, we consider the interlocutory appeal because the order requiring the disclosure of potentially privileged information here produces "a result that cannot be undone on direct appeal following a final judgment," and therefore the death knell exception to the final judgment rule applies. *In re Motion to Quash Bar Counsel Subpoena*, 2009 ME 104, ¶ 11, 982 A.2d 330.

## II. DISCUSSION

[¶12]  The issues raised on appeal are: (A) whether Coulombe made the necessary showing that Suczynski was a "representative" of him or one of the LLCs such that the attorney-client privilege remained intact despite Suczynski's inclusion in communications, and (B) the extent to which proof of the elements of fraud is necessary for the fraud component of the crime-fraud exception to apply.  These issues require us to review the court's factual findings as well as its interpretation of legal standards, *see In re Motion to Quash Bar Counsel Subpoena*, 2009 ME 104, ¶¶ 18-20, 982 A.2d 330, and to review the "court's determination of whether the crime-fraud exception applies to disputed documents for an abuse of discretion," *Bd. of Overseers of the Bar v. Warren*, 2011 ME 124, ¶ 23, 34 A.3d 1103.  We review the legal issues regarding the nature and scope of the privilege and the crime-fraud exception de novo and review the factual findings for clear error.[4]  *See In re Motion to Quash Bar Counsel Subpoena*, 2009 ME 104, ¶ 20, 982 A.2d 330.  "A finding of fact is clearly erroneous if there is no competent evidence in the record to support it; if the fact-finder clearly misapprehends the meaning of the evidence; or if the finding is so contrary to the credible evidence that it

---

[4] Because there is no final judgment, a motion for findings of fact and conclusions of law was not necessary to prevent the assumption of all necessary findings that have evidentiary support.  *See* M.R. Civ. P. 52; *cf. Lyons v. Baptist Sch. of Christian Training*, 2002 ME 137, ¶ 13, 804 A.2d 364.

does not represent the truth and right of the case." *Young v. Lagasse*, 2016 ME 96, ¶ 8, 143 A.3d 131 (quotation marks omitted).

[¶13] "[W]hen the party with the burden of proof is appealing . . . the appellant must show that the evidence compels a contrary finding." *Id.* Here, Coulombe and his LLCs bore the burden of establishing the applicability of the privilege by a preponderance of the evidence. *See Pierce v. Grove Mfg. Co.*, 576 A.2d 196, 199 (Me. 1990); *see also MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 592 (S.D. Fla. 2013); *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 838 A.2d 135, 167 (Conn. 2004). Harris, in turn, bore the burden of establishing the applicability of the crime-fraud exception to the attorney-client privilege by a preponderance of the evidence. *See In re Motion to Quash Bar Counsel Subpoena*, 2009 ME 104, ¶ 19, 982 A.2d 330.

A. Attorney-Client Privilege and Communications Involving a Third Party

[¶14] We are guided in our analysis by the language and purpose of Rule 502. "A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of any confidential communication [b]etween the client or client's representative and the client's lawyer . . . ." M.R. Evid. 502(b)(1). For purposes of M.R. Evid. 502, a "'representative of the client' is a person who has authority on behalf of the client to: (A) Obtain

professional legal services; or (B) Act on advice rendered as part of professional legal services." M.R. Evid. 502(a)(2). We discuss the legal meaning of the term "representative of the client" and the court's findings about Suczynski.

1. What Is a "Representative of the Client"?

[¶15] Coulombe argues that communications in which his attorney included Suczynski are privileged because Suczynski was an employee and a representative of Coulombe and his LLCs, and therefore the attorney-client seal was not broken. The Advisers' Note to former M.R. Evid. 502 (February 2, 1976)[5] provides that, to be a "representative" of a client, a person must be in the "control group" of the client:

> Subsection (a)(2) defines "representative of the client" as one having authority to obtain legal services and to act on advice rendered pursuant thereto on behalf of the client. This is an adoption of the so-called "control group" test. It narrows the privilege, confining it to communications by *persons of sufficient authority to make decisions for the client*. It would not protect communications from lower-level employees to lawyers to enable them to advise a decision-making superior.

(Emphasis added.) After considering whether to abandon the "control group" test following the decision of the Supreme Court of the United States in *Upjohn*

---

[5] The Maine Rules of Evidence were restyled effective January 1, 2015. The restyling did not affect the meaning of M.R. Evid. 502. *See* M.R. Evid. 502, Maine Restyling Note (November 2014).

*Co. v. United States*, 449 U.S. 383 (1981),[6] the Advisory Committee on the Maine Rules of Evidence "recommended retention of the control group test without change." M.R. Evid. 502, Advisory Committee Note (Feb. 1, 1983). The still-applicable control group test therefore includes as corporate representatives only "those officers, usually top management, who play a substantial role in deciding and directing the corporation's response to the legal advice given," *United States v. Upjohn Co.*, 600 F.2d 1223, 1226 (6th Cir. 1979), *rev'd*, 449 U.S. 383, and other individuals who have "sufficient authority to make decisions for the client," Advisers' Note to former M.R. Evid. 502 (Feb. 2, 1976).

### 2. Findings Regarding Suczynski's Role

[¶16] According to Coulombe's affidavit, Suczynski's role with respect to Coulombe and his LLCs was initially as "a trusted advisor" and later as the general manager of the Club. Coulombe authorized Suczynski to speak to his lawyers, and Suczynski "in many instances was authorized to act on [Coulombe's] behalf with respect to information and advice received from

---

[6] The Court held that the attorney-client privilege set forth in the Federal Rules of Evidence may extend to communications with counsel by corporate employees outside the "control group" of people who play a substantial role in deciding and directing the corporate response to legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 395-97 (1981). Thus, federal courts must determine, on a case-by-case basis, whether the privilege extends to specific internal communications with counsel, which may have taken place at the direction of corporate superiors. *Id.* at 396-97.

[Coulombe's] lawyers." Suczynski also "participate[d] in the decision-making regarding the golf course." The affidavit did not specify what matters Suczynski had been authorized to act on or indicate when or how Coulombe had given him such authorization.

[¶17] As the court found, there is no evidence that, before March 14, 2013, Suczynski had been expressly hired by Coulombe or either LLC, or was a member of either LLC. The affidavit submitted does not demonstrate that he undertook or directed any specific action on behalf of either LLC. Given the limited facts set forth in Coulombe's conclusory affidavit, the court did not err in determining that Coulombe had failed to establish, by a preponderance of the evidence, the existence of a privilege for communications that included Suczynski *before* Suczynski was hired as manager of the Club on March 14, 2013. *See* M.R. Evid. 502(a)(2). The court was not compelled to find, for that initial period of time, that Suczynski was Coulombe's legally authorized personal representative, imbued with the authority to make decisions related to Coulombe's legal services, or that Suczynski was in the "control group" of either of Coulombe's LLCs. *See id.*; Advisers' Note to former M.R. Evid. 502 (Feb. 2, 1976).

B.     Necessity to Prove the Elements of Fraud for the Fraud Exception to the Attorney-Client Privilege to Apply

[¶18]   We turn then to the application of the crime-fraud exception. Preliminarily, we note that the process employed by the court to assess the applicability of the crime-fraud exception was prompt and effective.   The parties do not dispute the process or the propriety of the court's decision to undertake *in camera* review of attorney-client communications based on the evidence presented, which met the standard of establishing a "reasonable belief that *in camera* review may yield evidence that establishes the [crime-fraud] exception's applicability."  *United States v. Zolin*, 491 U.S. 554, 574-75 (1989).

[¶19]   Rather, the argument on appeal concerns whether the court erred in its substantive application of the law in ordering disclosure after *in camera* review.  Specifically, Coulombe and his LLCs argue that all elements of fraud must be present—and established by a preponderance of the evidence—for the crime-fraud exception to apply, and that the evidence is insufficient to show that Harris's reliance on Coulombe's representations was justifiable.

[¶20]  We first summarize the existing law of attorney-client privilege and the crime-fraud exception to the privilege, and next review the applicability of the exception in the matter before us.

1.    Law of Attorney-Client Privilege

[¶21]   The attorney-client privilege is a venerable privilege, well established in the law and available to individuals, corporations, and other entities.  *See* M.R. Evid. 502(a)(1); *In re Motion to Quash Bar Counsel Subpoena*, 2009 ME 104, ¶ 13, 982 A.2d 330.  When relied on by businesspeople and corporate entities, the privilege serves the public benefit of encouraging full and candid communication with counsel, and enabling compliance with business-related laws and regulations.  *See In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1390-91 (Fed. Cir. 1996).

[¶22]  "The attorney-client privilege . . . is the oldest of the privileges for confidential communications known to the common law."  *In re Motion to Quash Bar Counsel Subpoena*, 2009 ME 104, ¶ 13, 982 A.2d 330 (quotation marks omitted).  The privilege is designed "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Id.* (quotation marks omitted).  "To fulfill that purpose, clients must

be free to make full disclosure to their attorneys of *past* wrongdoings." *Id.* (quotation marks omitted). This salutary purpose is critical.

[¶23] The public policies served by the attorney-client privilege must be counterbalanced, however, with the "broader public interests in the observance of law and administration of justice" served by the crime-fraud exception to the attorney-client privilege. *Id.* ¶ 14 (quotation marks omitted). That exception allows the disclosure of otherwise privileged communications by a party who consults with an attorney in order to facilitate the party's commission or concealment of "*ongoing* or *future* wrongdoing." *Id.*

[¶24] The party asserting the existence of the attorney-client privilege has the initial burden of demonstrating its applicability. *See Pierce*, 576 A.2d at 199. An opposing party seeking to show that the crime-fraud exception to the attorney-client privilege applies then has the burden to prove, by a preponderance of the evidence, that (1) "the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place" and (2) "the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity." *In re Motion to Quash Bar Counsel Subpoena*, 2009 ME 104, ¶¶ 18, 19, 982 A.2d 330 (quotation marks omitted). When these elements are met, the exception will

apply whether or not the attorney is aware of the client's purpose to use the attorney in furtherance of a fraud. *See id.* ¶ 17. The focus of the inquiry is on the actions and motivations of the client. *Id.*

2. Applicability of the Crime-Fraud Exception

[¶25] To analyze the issues that Coulombe raises with respect to the crime-fraud exception, we (a) review de novo the legal question of whether every element of a completed fraud must be demonstrated for "fraudulent activity" to have been engaged in or planned, and (b) review for clear error the court's findings of fact regarding the elements of the crime-fraud exception and determine whether the court abused its discretion in its ultimate order requiring disclosure.

a. Extent of Proof of Elements of Fraud

[¶26] Before reviewing the court's actions, we must determine whether a party seeking the application of the crime-fraud exception is legally required to establish actual, justifiable reliance on the client's representations.[7]

---

[7] To prevail in a cause of action for fraud, a party must prove five elements by clear and convincing evidence:

(1) A party made a false representation,

(2) The representation was of a material fact,

(3) The representation was made with knowledge of its falsity or in reckless disregard of whether it was true or false,

Neither we nor the courts of Massachusetts—the other jurisdiction that applies the standard of proof by a preponderance of the evidence for the crime-fraud exception to apply, *see In re A Grand Jury Investigation*, 772 N.E.2d 9, 21-22 (Mass. 2002) (citing *Purcell v. Dist. Attorney for the Suffolk Dist.*, 676 N.E.2d 436, 439 (Mass. 1997))—have directly addressed this issue.  Other jurisdictions, however, that require only a prima facie showing that the crime-fraud exception applies, have addressed the question.[8]  For instance, the United States Court of Appeals for the D.C. Circuit has held that a prima facie showing of *misconduct*—not full proof of a realized crime or fraud—is contemplated for overcoming the privilege: "Communications otherwise protected by the attorney-client privilege are not protected if the communications are made in furtherance of a crime, fraud, *or other*

---

(4) The representation was made for the purpose of inducing another party to act in reliance upon it, and

(5) The other party justifiably relied upon the representation as true and acted upon it to the party's damage.

*Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280 (emphasis omitted).

[8]  *See, e.g.*, *In re Berkley & Co.*, 629 F.2d 548, 553 (8th Cir. 1980) (holding that prima facie evidence of a realized crime or fraud is not necessary to overcome the privilege); *see also In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1039 (2d Cir. 1984) (holding that "the client need not have succeeded in his criminal or fraudulent scheme for the exception to apply"); *In re USA Waste Mgmt. Res., L.L.C.*, 387 S.W.3d 92, 98 (Tex. App. 2012) ("A party who asserts the crime/fraud exception must show: (1) a prima facie case of the *contemplated* crime or fraud; and (2) a nexus between the communications at issue and the crime or fraud." (emphasis added)).

*misconduct*." *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985) (emphasis added). The court held that a party asserting the exception must provide "evidence that if believed by the trier of fact would establish the elements of an ongoing *or imminent* crime or fraud," without the requirement that the party prove all elements of a *completed* crime or fraud. *Id.*

[¶27] The Supreme Court of Alaska similarly "decline[d] to accept [the] argument that 'crime or fraud' should be narrowly defined, and h[e]ld that services sought by a client from an attorney in aid of any crime or a bad faith breach of a duty are not protected by the attorney-client privilege." *Cent. Constr. Co. v. Home Indem. Co.*, 794 P.2d 595, 598 (Alaska 1990) (emphasis omitted). "Deception and deceit in any form universally connote fraud. Public policy demands that the fraud exception to the attorney-client privilege . . . be given the broadest interpretation." *Id.* (quotation marks omitted). "The policy of promoting the administration of justice would not be well served by permitting services sought in aid of misconduct to be cloaked in the attorney-client privilege." *Id.*[9]

---

[9] *See also Official Comm. of Unsecured Creditors of St. Johnsbury Trucking Co. v. Bankers Tr. Co. (In re St. Johnsbury Trucking Co.)*, 184 B.R. 446, 456 (Bankr. D. Vt. 1995) ("Precedent and authority also recognize that not just technical crimes or frauds are excluded from the attorney-client privilege. . . . [C]ommunications in furtherance of some sufficiently malignant purpose will not be protected."); *Fellerman v. Bradley*, 493 A.2d 1239, 1245 (N.J. 1985) (giving the term "fraud" an "expansive reading"); *Volcanic Gardens Mgmt. Co. v. Paxson*, 847 S.W.2d 343, 347 (Tex. App. 1993) ("[A]lthough

18

[¶28]  In this context, fraud must be understood broadly "as [a] generic term, embracing all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all surprise, trick, cunning dissembling, and any unfair way by which another is cheated." *Volcanic Gardens Mgmt. Co. v. Paxson*, 847 S.W.2d 343, 347 (Tex. App. 1993) (quotation marks omitted).[10]  "From early on in speaking of the crime/fraud exception, courts did not and still do not limit the exception to prosecutable crimes or to criminal and civil frauds," I Edna Selan Epstein, *Attorney-Client Privilege and  the Work-Product Doctrine* § 1.V.B.13 (5th ed. 2012), and "there has been a gradual, but steady expansion of the scope of the exception," Edward J. Imwinkelried, *The New Wigmore: Evidentiary Privileges* § 6.13.2.d.1 at 966 (2002); *see also* I Epstein § 1.V.B.13 ("[T]here is no doubt that courts are recognizing a wider range of improper behavior" that will "vitiate the availability of the attorney-client privilege.").

---

the 'fraud' referred to in the exception certainly includes common law fraud and criminal fraud, it is much broader than that." (footnote omitted)).

[10]  Some courts have applied a stricter interpretation of the crime-fraud exception in patent infringement cases, reasoning that each of the elements "must be established by at least prima facie evidence," *Union Carbide Corp. v. Dow Chem. Co.*, 619 F. Supp. 1036, 1052 (D. Del. 1985)—a standard of proof that differs from ours.  *See also Research Corp. v. Gourmet's Delight Mushroom Co.*, 560 F. Supp. 811, 820 (E.D. Pa. 1983) (requiring, in a patent infringement case, a showing of a prima facie case of fraud because "for the privilege to take flight, unlawful conduct, not mere inequity, must be demonstrated.").

[¶29]    Ultimately, in determining what must be proved for the crime-fraud exception to apply in Maine, we must balance the need for clients to have the protection of privileged communications with their attorneys in order to obtain effective representation regarding current legal concerns or any *past* wrongdoing, against the need to prevent attorneys in the honorable practice of law from being used to perpetrate *ongoing or future* wrongdoing. Striking the proper balance is critical in assuring that attorneys can serve their clients effectively without having their legal services used for fraudulent or criminal purposes.

[¶30]    In order to strike that balance, and to maintain the high standards of the legal profession, the focus in determining whether the fraud portion of the crime-fraud exception applies must be on the elements within the control of the client that involve either the engagement in or the *planning of* a fraud.   Because proof of planned fraudulent activity can result in the exception being applied, fraudulent activity may, for purposes of the crime-fraud exception to attorney-client privilege, be activity that, although deceptive and fraudulent, falls short of the fully realized civil tort of fraud.[11]

---

[11] At this stage in the proceedings, the sufficiency of the evidence to prove fraud is not before the court.  Rather, the sufficiency of the evidence of Harris's claims of fraudulent inducement and fraudulent misrepresentation will be resolved separately, after discovery is complete, either through a dispositive motion or through a trial at which the standard of proof by clear and

20

[¶31]  Although proof of the complete tort is not necessary for the exception to apply, a party seeking to establish that a client was engaged in or planning fraudulent activity must offer evidence of the client's intention and expectation that the party alleging injury would rely on the client's misrepresentations, omissions, or other deceptive actions.  *See In re Motion to Quash Bar Counsel Subpoena*, 2009 ME 104, ¶ 18, 982 A.2d 330; *In re Sealed Case*, 754 F.2d at 399; *Cent. Constr. Co.*, 794 P.2d at 598.  Without proof of the intention and expectation of reliance, the client's engagement in or planning for "fraudulent activity," *In re Motion to Quash Bar Counsel Subpoena*, 2009 ME 104, ¶ 18, 982 A.2d 330, which requires intentional deception, cannot be established.  *See Cent. Constr. Co.*, 794 P.2d at 598.  To require proof, however, of actual, justifiable reliance both places the cart before the horse and misses the point of the crime-fraud exception—to allow discovery of a client's use of an attorney's services in the planning or concealment of fraudulent activity.

[¶32]  Here, the court's findings demonstrate that it applied the proper legal test.  It found, for purposes of the discovery motion, that Harris had

---

convincing evidence will be applied.  *See Barr*, 2012 ME 108, ¶ 16, 49 A.3d 1280; *cf. BP Alaska Expl., Inc. v. Superior Court*, 199 Cal. App. 3d 1240, 1262-63 (1988) (holding that a court is "not reviewing the merits of a fraud cause of action" but is instead "reviewing the merits of a *discovery order* to determine if [a party] will have access to communications between [the opposing party] and its attorneys to aid [the party] in proving its causes of action.").  Because the question at this stage is not whether Harris can prove the tort of fraud, we need not address (1) whether a false promise of future performance can constitute a fraud or (2) whether the evidence presented would establish the element of justifiable reliance by clear and convincing evidence.

demonstrated by a preponderance of the evidence that (a) Coulombe was engaged in or planning fraudulent activity when the attorney-client communications took place and (b) Coulombe's communications with counsel were intended by him to facilitate or conceal the fraudulent activity. *See In re Motion to Quash Bar Counsel Subpoena*, 2009 ME 104, ¶¶ 18, 19, 982 A.2d 330. In doing so, the court made findings about the nature of Coulombe's actions, his intentions, and his expectation of reliance by Harris. Specifically, the court found that the documents it concluded fell within the crime-fraud exception "corroborate or buttress the Plaintiffs' claims that Defendants intentionally kept Plaintiff Harris in the dark about their actual plans for management of the [Club] long enough to complete certain transactions which were to the benefit of the Defendants and to the detriment of Plaintiff Harris." Having determined that the court applied the proper legal standard, we now review the court's factual findings for clear error. *See id.* ¶ 20.

b.    Review of Factual Findings

[¶33]   We separately review the court's findings with respect to each element required for the crime-fraud exception to the attorney-client privilege to apply.

### (1) Client's Involvement In, or Planning For, Fraudulent Activity

[¶34] In the materials provided to the court, there is evidence that, if believed, could demonstrate that, during a time when Coulombe did not intend to hire Harris to manage the golf course, Coulombe took actions to convince Harris that it would be hired in order to prevent Harris from competing to purchase the club, induce JJR to sell property for a reduced price, and induce Harris to assist Coulombe in getting work on the golf course started. Specifically, there is evidence that, during the time when Coulombe was communicating with counsel, he communicated to others an intention not to hire Harris as golf course manager but also (1) proposed a specific rate of pay to Harris if Harris agreed to manage the course: "You get 5% of gross if I don't make money and 8% if I do make money"; (2) reassured Jeffrey Harris, "It's done and you're my guy," when Harris's counsel pressed for a written management agreement before land transactions occurred; (3) purchased JJR's nearby property for less than Jeffrey Harris's initial minimum offering price; and (4) had Harris begin work to get the golf course in order in February and early March 2013.

[¶35] This evidence was sufficient to support the court's discovery-related finding that, during the time when Coulombe was

exchanging the identified communications with his legal counsel, Coulombe was engaged in or planning fraudulent activity that was expected and intended to induce Harris's reliance. *See id.* ¶¶ 18, 20. The court did not commit clear error in making this finding. The next question is whether there is sufficient evidence in these communications that Coulombe intended to facilitate or conceal this fraudulent activity through his communications with counsel.

> (2) Client's Intention to Facilitate or Conceal the Fraudulent Activity Through the Communications with Counsel

[¶36] After the court reviewed *in camera* a collection of Coulombe's communications with counsel related to the purchase of the Club at auction, the purchase of JJR's properties, and the management of the golf course, it entered a specifically tailored order directing the release of identified communications. When viewed along with the materials that Harris had already submitted, the court did not commit clear error in finding by a preponderance of the evidence that the identified communications with counsel demonstrated Coulombe's purpose to use counsel to facilitate or conceal his deception of Harris through fraudulent activity. In particular, these specific communications shed light on Coulombe's planning and the

timing of his communications to Jeffrey Harris and his other legal and business associates about his intentions. The court did not abuse its discretion in ordering the release of specific communications between Coulombe and his attorneys. *See Warren*, 2011 ME 124, ¶ 23, 34 A.3d 1103.

[¶37] There is one possible exception to our decision affirming the trial court's determination, however. Although Coulombe does not specifically argue that any particular pages of the materials submitted for the court's review were improperly included in the court's disclosure order, one email exchange appears to be unrelated to Coulombe's dealings with Harris and may have been inadvertently ordered disclosed. We therefore remand for the court to clarify whether it intended to include that email exchange, which appears at pages 15626 through 15633 of the materials submitted for review, in its order requiring disclosure.

[¶38] Accordingly, with the exception of those pages, which the court will reconsider on remand, we affirm the court's judgment.

The entry is:

> Judgment affirmed, except with respect to pages 15626 to 15633 of the documents reviewed *in camera*. Remanded for the court to determine whether the crime-fraud exception applies to those pages.

**On the briefs:**

Paul McDonald, Esq., and Eben M. Albert, Esq., Bernstein Shur, Portland, for appellants Paul Coulombe, PGC1, LLC, and PGC2, LLC

James D. Poliquin, Esq., Benjamin N. Donahue, Esq., Norman Hanson & DeTroy, LLC, Portland, for appellees Harris Management, Inc., and JJR Associates, LLC

**At oral argument:**

Eben M. Albert, Esq., for appellants Paul Coulombe, PGC1, LLC, and PGC2, LLC

James D. Poliquin, Esq., for appellees Harris Management, Inc., and JJR Associates, LLC

Business and Consumer Docket docket number CV-2014-60
FOR CLERK REFERENCE ONLY