**In re IRENE W.**

Supreme Judicial Court of Maine.

Argued May 10, 1989.
Decided July 10, 1989.

---

Laurie Gibson (orally), Skelton, Taintor & Abbott, Auburn, for appellant.

Carmen Coulombe, Meris Bickford (orally), Dept. of Human Services, Augusta, Anthony Lewis, Guardian Ad Litem, C.A.S.A., Portland, for appellee.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

HORNBY, Justice.

This is a sad case involving an 11–year–old girl who was removed from her mother's care largely because of the young girl's mistaken view of what she could thereby accomplish. The mother's resentment at what happened and her unwillingness to participate in family counseling to achieve reunification have compounded the problem. Because the record supports the District Court's (Lewiston, *Beliveau, J.*) view that counseling is necessary before custody can safely be returned to the mother, we affirm its final child protection order.

Joanne W., who is divorced from Stanley W., moved from Ohio to Maine in October of 1986 with her then 10–year–old daughter Irene W. Just before the move, her other daughter Crystal, then age 16 and in the custody of her father, decided to join her mother and sister. The shared housing the mother had arranged in Auburn did not work out due to Crystal's disruptive behavior, and the three ended up living in the Pineland Motel in Auburn. During the days, the girls attended school and the mother went to work. Because Stanley had custody of Crystal, the Ohio Department of Human Services was alerted by the move to Maine and requested the Maine Department of Human Services to investigate. A Maine DHS caseworker interviewed the two girls at school in late November and early December without notifying their mother. Crystal, who had decided she wanted to return to Ohio, informed the caseworker that she had been subjected to a long history of physical abuse by her mother, apparently referring to corporal discipline the mother had imposed in connection with Crystal's stealing problems. Irene also reported physical abuse and showed the caseworker bruises on her arm that, she said, were caused by her mother pinching her very hard when she did not sit up straight. Irene later admitted that the marks on her arms were created by allergy testing, not by her mother, and that her goal had been to return to Ohio with Crystal, to live with their father. At the time, however, the caseworker had only Ohio's referral, the girls' reports and statements by father Stanley, who also reported physical abuse by Joanne. The caseworker later had reason to question Stanley's credibility when she learned that he had been convicted of mail theft, lived with a girlfriend involved in drugs and prostitution, lied to Irene's foster family and subsequently directly to the caseworker.

Based solely on the Ohio referral, the girls' stories, and Stanley's report, and without any notification to the mother because of Ohio's advice that she might take the girls and flee, the Department obtained an ex parte preliminary child protection order on December 8, 1986, granting temporary custody of Irene and Crystal to DHS. A hearing at which the mother could be heard did not occur until December 22, 1986. By then, DHS was no longer pursuing the matter of Crystal (who re-

turned to her father's custody in Ohio without objection from her mother). At the December 22, hearing, the District Court (Lewiston, *Henry, J.*) found the matter to be a "very close case," specifically found that the mother was not responsible for Irene's bruises, referred to certain physical discipline only as "inappropriate," but ultimately granted temporary custody to DHS upon the finding that Irene was in "immediate risk of jeopardy through emotional abuse." The District Court required that the mother either undergo psychological or psychiatric examination by a professional approved by DHS or voluntarily release all records of previous counseling and psychiatric or psychological examinations. DHS subsequently permitted only limited visitations. One 15-minute visit was permitted before the Christmas holidays ended. At a second visitation on January 14, 1987, the caseworker attempted to end the meeting early because of the mother's accusatory attitude toward her daughter. A pushing incident ensued, and Joanne was arrested for disorderly conduct. (She was ultimately acquitted.) DHS, without seeking court approval, permitted no further visitations until May 19, 1987. On that occasion a 25-minute visitation went by without any communication between Irene and Joanne. No further visitations were permitted prior to the hearing on the final child protection order.

In the meantime, Irene began to develop behavioral problems. On April 24, 1987, she started a fire in the school bathroom on a dare. This incident resulted in a psychiatric evaluation at DHS's request. The psychiatrist, Dr. Griffey, evaluated Irene during the course of five separate one-hour visits. He later testified that Irene told him that she lit the fire because she thought if she were bad enough she would be taken out of the foster home and sent back to her father in Ohio. Dr. Griffey ultimately concluded that Irene was experiencing an adjustment disorder as a result of stress over the past six months, a period of time subsequent to her removal from her mother's care. He testified that the adjustment disorder was caused by a number of factors including separation from

her home in Ohio, separation from her mother, some of the abuse Irene described (her mother becoming angry and hitting her), a new school, a new foster home, and the requirement that this 11-year-old fend for herself. Dr. Griffey testified that abuse had not been his focus, that he did not explore that subject in great detail and that he had only the DHS reports in that respect. Irene also reported to him that she was afraid to be with her mother unless other adults were there who could protect her because she was afraid that her mother would "lose it." Because of Irene's reported fright, Dr. Griffey concluded that it would be a "very anxiety-provoking experience for her" to be returned to her mother—an anxiety that was real regardless of Irene's role in the initial separation. His conclusion that Irene should not be returned to her mother, however, was only for the very near future. He coupled it with a recommendation for therapy before reunification. His final opinion was that Irene should be kept stable, in foster care, until more information could be acquired on permanent placement.

As a result of several days of hearings during the summer and fall of 1987, the District Court (Lewiston, *Beliveau, J.*) issued a final child protection order on November 25, 1987, directing that custody of Irene remain with DHS, that Joanne and Irene engage immediately in intensive family therapy and supervised visits, and that custody be returned to Joanne within three months under the continuing supervision of DHS. Subsequently, on a motion by DHS accompanied by an affidavit that Joanne had failed to engage in therapy, the District Court suspended the transfer of custody to Joanne. Joanne has appealed the final child protection order. Like the Superior Court (Androscoggin County, *Bradford, J.*) we affirm.

■ Joanne complains that during the course of the final custody hearing, the presiding District Court judge ordered that she undergo an evaluation by Dr. Griffey and then permitted Dr. Griffey to testify as a court-appointed expert. The District Court judge in the preliminary protection

hearing had ordered Joanne to undergo an evaluation by a professional acceptable to the Department (an order that we interpret to mean a professional satisfactory to both parties, failing which Joanne could have sought the court's approval for an alternate selection). Joanne failed to comply with that order. When it subsequently became apparent during the course of Dr. Griffey's testimony that his evaluation of the family circumstances would be helped by an examination of Joanne, the court ordered such an examination. Joanne did not then object to Dr. Griffey or challenge his impartiality, and we do not accept her newly found claim of bias arising from Dr. Griffey's testimony that he was primarily concerned with Irene's welfare. The District Court's selection of a physician who had already observed and evaluated the daughter in these circumstances is not so obviously prejudicial that the court was required to select someone else in the absence of any objection from Joanne or her lawyer. We observe, moreover, that Joanne was free to seek state funds to hire her own expert. (She successfully obtained state funds to bring friends from Ohio to testify.) Consequently we find no abuse of discretion in the District Court's appointment of Dr. Griffey as its own expert under M.R.Evid. 706(a).[1] *See Villa v. Smith,* 534 A.2d 1310, 1312 (Me.1987).

■ Joanne next complains that the District Court adopted the factual findings proposed by the Department. We have held that this practice does not constitute reversible error. *In re Sabrina M.,* 460 A.2d 1009, 1013 (Me.1983). Given the continuing severe inadequacies of secretarial and law clerk assistance to the District Courts we see no reason to retreat from that holding. Instead, we simply review such findings more carefully than usual.[2] *Id.* The District Court's ultimate finding—that returning Irene to her mother's custody at this time would place Irene "in circumstances of jeopardy as a result of emo-

tional harm"—is sufficient. The statute, 22 M.R.S.A. § 4035(2) (Supp.1988), requires only that a finding of jeopardy be made; this requirement was clearly fulfilled here.

■ Finally, we are content that the District Court properly applied the statutory standards and that its conclusion is supported by a preponderance of the evidence. 22 M.R.S.A. § 4035(2) (Supp.1988). The statutory definition of "jeopardy" is, among other things, "serious harm or threat of serious harm." 22 M.R.S.A. § 4002(6)(A) (Supp.1988). "Serious harm" in turn means "[s]erious mental or emotional injury or impairment which now or in the future is likely to be evidenced by serious mental, behavioral or personality disorder, including severe anxiety...." 22 M.R.S.A. § 4002(10)(B) (Supp.1988). It is apparent that the District Court's finding of jeopardy here, explicitly premised on "emotional harm," referred to "serious" emotional harm. The court based this conclusion on the testimony of Dr. Griffey. Although Dr. Griffey did not testify specifically in the terms used by the statute, he referred to a particular piece of empirical research demonstrating that where persons are "subjected to sufficient anxiety"

> there's an 85 percent chan[c]e that in the year following that, they'll develop a significant mental or physical illness. Consequently, yes, I do think, that Irene coming home right now would place her under significant anxiety because, from what she's told me and some of her behavior, she has said she's afraid to be alone with her mother, or even in a room with her mother, unless there's somebody else there—I think there's at least an 85 percent likelihood that she might develop a problem.

On cross-examination, moreover, Dr. Griffey predicted severe anxiety for Irene if she were returned to her mother. We are satisfied that this testimony is adequate

---

**1.** Joanne does not challenge any other aspect of the expert's appointment under Rule 706.

**2.** We do observe that it would be helpful to have statements concerning which evidence the District Court finds credible and which evidence it

does not find credible. Summaries of all the testimony does not aid our review; both we and the advocates can review the actual testimony in the record.

evidence to support the District Court's conclusion that there was a threat of serious emotional harm.

■ Finally, although we are troubled by the distinct impression that DHS's intervention has contributed to the breakdown in this family, we conclude that the issue before the District Court was whether, at the time of its final custody order, Irene W. was in jeopardy—not whether preliminary removal was appropriate.[3] Although this seems a harsh approach from the perspective of the family from which the child has been removed, we see no legitimate alternative. Wherever the fault may lie, the question is what should happen now. The District Court showed commendable sensitivity to the situation it confronted by ordering reunification within three months of its order. It is tragic that the mother has been unable to overcome her daughter's false accusations and her resentment against DHS and participate in family therapy that would permit her and her daughter to be reunited.

The entry is:

Judgment affirmed.

All concurring.

---

**3.** The controlling statute directs that after the hearing on the final protection petition "the court shall make a finding, by a preponderance of the evidence, whether the child *is* in circumstances of jeopardy to his health or welfare." 22 M.R.S.A. § 4035(2) (Supp.1988) (emphasis supplied). Likewise, section 4036(2)(A) lists protection of "the child from jeopardy to his health or welfare" as the top priority in determining the disposition of a child.