STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
Nos. BCD-CV-17-39 & BCD-CV-17-54

DENNIS BARRIAULT,                          )
                                           )
          Plaintiff,                       )
                                           )
     v.                                    )
                                           )
DENRON, INC.,                              )
                                           )
          Defendant.                       )
_____           )
RONALD F. BARRIAULT.,                      )      **COMBINED ORDER ON PENDING**
                                           )               **MOTIONS**
          Plaintiff,                       )
                                           )
     v.                                    )
                                           )
CENTRAL DISTRIBUTORS, INC., et             )
al.,                                       )
                                           )
          Defendants.                      )

Five motions are pending before the Court in these two consolidated cases, as described in more detail herein. The Court heard oral argument on all motions on August 1, 2019. Dennis Barriault was represented by George T. Dilworth, Esq.; Ronald Barriault was represented by Kurt Olafsen, Esq.; Denron, Inc., was represented by Timothy Bryant, Esq.; Central Distributors, Inc. was represented by Daniel Nuzzi, Esq. and Stacy Stitham, Esq.; and the Fourth-Generation Shareholders were represented by Tim Norton, Esq.

BACKGROUND

These consolidated civil actions relate to two brothers, Ronald and Dennis,[1] and the two corporations they own jointly either in whole or in part (the "Corporation Defendants"). Ronald and Dennis are the only two shareholders of Denron, and also serve as its only officers as President

---

[1] Ronald and Dennis share the last name "Barriault" and as such are referred to by their first names in this Order.

1

and Treasurer, respectively. Ronald and Dennis are also shareholders in Central Distributors, Inc. ("CDI") along with their three adult children; however, Ronald and Dennis are the only two directors of CDI.[2] Litigation commenced in the first instance when Ronald sued Denron to allow a $400,000 distribution to its two shareholders. Dennis was not apprised of that action and had previously refused to allow the distribution. Dennis sued Denron in BCD-CV-17-39 for consenting to judgment in that action and otherwise facilitating the $400,000 transaction, and Ronald intervened as a party-in-interest. Ronald then sued Dennis and CDI in BCD-CV-17-54 for actions Dennis allegedly took in relation to that company. Each man has now sued for dissolution of one company or the other: Dennis for dissolution of Denron, Ronald for dissolution of CDI. However, it appeared to the Court from the parties' presentations at oral argument that the parties recognize the high standard that must be met before a Court has authority to dissolve either entity.

Regardless, the two Defendant Corporations each seek judgment in their favor on the dissolution counts pled against them on narrower grounds. They argue, essentially, that under the undisputed facts no one is "in control" of either corporation and therefore the alleged bad acts of a director of either corporation cannot result in judicial dissolution of the corporation as a matter of law.

The other three motions are more procedural. CDI seeks to exclude the expert testimony of Mark Filler, Denron seeks protection from the Court by ordering Dennis to take various actions and abstain from others, and the so-called "Fourth Generation" of Barriaults—all shareholders of CDI, and purportedly all responsible for the day-to-day operations of CDI—seek a "remedy other than dissolution," specifically, that the Court order CDI to fill a purported third director's seat with one of them. The Court considers each motion in turn.

[2] The Fourth-Generation Shareholders claim that there is a vacant seat for a third director, and move this Court for an order that CDI fill the seat, as discussed below.

1. Defendant Corporations' Motions for Partial Summary Judgment

Both Defendant corporations have moved for summary judgment on Count III of the respective complaints pleaded against them, which coincidentally both plead one count of judicial dissolution. The plaintiff in each action alleges "illegal, oppressive[,] or fraudulent" acts on the part of the directors of the corporation; however, as each plaintiff is in fact a director of each corporation, it is obviously the other director that they are accusing. *See* 13-C M.R.S. § 1430(2)(B). The Defendant Corporations claim that because there is no factual dispute that neither Dennis nor Ronald is "in control" of either corporation, neither man's bad acts entitles the other to judicial dissolution as a matter of law under the statute.

The statute at issue, titled "Grounds for Judicial Dissolution" under Maine's business corporation act, provides in relevant part as follows:

> A corporation may be dissolved by a judicial dissolution in a proceeding by[] . . . [a] shareholder if it is established that . . . [t]he directors or those in control of the corporation have acted, are acting or will act in a manner that is illegal, oppressive or fraudulent.

13-C M.R.S. § 1430(2)(B). The Defendant Corporations ask this Court to analogize to the judicial dissolution statute for LLCs, which provides in relevant part as follows:

> A limited liability company is dissolved, and its activities must be wound up, upon the occurrence of . . . [o]n application by a member, the entry by the Superior Court of an order dissolving the limited liability company on the grounds that the members in control of the limited liability company have acted, are acting or will act in a manner that is illegal or fraudulent[.]

31 M.R.S. § 1595(1)(E). *See also Witham Family, L.P. v. D.B.L. Enters., Inc*., No. BCD-CV-17-32, 2019 Me. Bus. & Consumer LEXIS 5, *3-4 (March 7, 2019) (concluding that "members in control" means members constituting a majority of interest in the LLC). The Defendant Corporations' argument, however, fails for two reasons. First, it ignores the plain text

of 13-C M.R.S. § 1430(2)(B). Second, and relatedly, it fails to account for legal differences between the organization of business corporations and LLCs—differences that the Legislature incorporated into the two statutory judicial dissolution provisions.

Corporations and LLCs differ in important ways. LLCs are owned by members, which may also act as managers; however, there is no requirement that a manager be a member, or vice versa. Corporations have a more formal three-tiered management structure with shareholders, who elect directors, who appoint officers. The respective dissolution statutes for these business entities account for this difference: while the LLC dissolution statute speaks of "*members* in control," the corporate dissolution statute speaks of "*directors or those* in control." 13-C M.R.S. § 1430(2)(B); 31 M.R.S. § 1595(1)(E) (emphases added). As this Court noted in *Witham*, the Legislature's decision to exclude manager misfeasance as grounds for LLC dissolution seems to have been deliberate. *See Witham Family, L.P*, No. BCD-CV-17-32, 2019 Me. Bus. & Consumer LEXIS 5, *6 n. 1.

On the other hand, with respect to directors of corporations, the Legislature expressly wrote directors into—rather than out of—the corporate dissolution statute. Separate provisions of the corporate judicial dissolution statute deal with shareholders, who are much more analogous to members in the LLC context. *See* 13-C M.R.S. § 1430(2)(C)-(D). As noted above, in this case it seems that each Plaintiff shareholder may have a difficult time proving that the other director has acted, is acting, or will act in a manner that is illegal or fraudulent. However, that is clearly a factual issue that is unresolved one way or the other in the summary judgment record. Moreover, there is also a genuine factual dispute as to who, if anyone, is in control of either corporation. The corporate dissolution statute references "directors *or* those in control," meaning proof of illegal or fraudulent acts by either category of persons is sufficient to prove entitlement to judicial

4

dissolution. 13-C M.R.S. § 1430(2)(B) (emphasis added). The provision of the LLC Act the Defendant Corporations analogize to references "members in control" exclusively. 31 M.R.S. § 1595(1)(E). Whether "those in control" means a majority of shareholders or something else is not an issue before the Court on this motion.

Based on the foregoing, the Defendant Corporations' motions for partial summary judgment on Count III of the complaints are both denied.

2. CDI's Motion to Exclude Expert Testimony of Mark Filler

CDI does not argue that Mark Filler is not qualified as an expert, or at least, that does not form the grounds for its motion to exclude. *See* M.R. Evid. 702. Instead, CDI's quarrel is with Mr. Filler's methodology. *See Searles v. Fleetwood Homes of Pa., Inc.*, 2005 ME 94, ¶ 22, 878 A.2d 509 ("To meet the two-part standard for the admission of expert testimony, the testimony must also meet a threshold level of reliability.") (quoting *In re Sarah C*., 2004 ME 152, ¶ 11, 864 A.2d 162); *State v. Williams*, 388 A.2d 500, 504 (Me. 1978). Ronald defends Mr. Filler's methodology, but more fundamentally opposes the motion on the grounds that CDI's argument is directed more at the weight than the admissibility of Mr. Filler's testimony.

The Court agrees with Ronald that CDI's arguments in this motion are misplaced, and better reserved for argument after trial. At oral argument on the motion, in response to a query from the Court, CDI pointed out that any trial in this matter will be a bench trial and as such the Court can decide now on the papers whether or not to credit Mr. Filler's testimony. However, in the absence of agreement by the parties, the Court is not inclined to relax Maine's Rules of Evidence and procedural rules simply because the case will be tried to the bench rather than a jury. The procedural posture of this case distinguishes it from *Clifford v. Case*, No. CV-07-03, 2008 Me. Bus. & Consumer LEXIS 2, *18-21 (July 18, 2008), where deciding the issue of the

admissibility of Mr. Filler's testimony was necessary to decide the pending motion for summary judgment. *Downeast Ventures, Ltd. v. Wash. Cty.*, No. 05-87-B-W, 2007 U.S. Dist. LEXIS 14733, at *6-13 (D. Me. Mar. 1, 2007) is substantively distinguishable. In that case, the U.S. District Court for the District of Maine (*Kravchuk, M.*) ruled that those aspects of Mr. Filler's testimony "for which there is some data on which to rely" was admissible, and only excluded evidence of Mr. Filler's projections with respect to the future profits of a planned steel-building enterprise that never got off the ground. Mr. Filler's projections in this matter clearly rely on "some data," and the going concern of beverage distribution is more analogous to the construction and plowing revenue on which the U.S. District Court allowed Mr. Filler to testify as to lost revenue.  In sum, whatever the merits of CDI's complaints with respect to Mr. Filler's methodology, they are better reserved for cross-examination of Mr. Filler, rebuttal from its own expert witness, and argument.

Nestled within the argument to exclude Mr. Filler's testimony is an argument that the shareholders have agreed upon a mechanism for valuing their stock in CDI in a Buy-Sell Agreement. *See Pelletier v. Pelletier*, 2012 ME 15, 36 A.3d 903. The limited factual record before the Court on the instant motion is insufficient to apply the agreement to preclude Mr. Filler's testimony as to the valuation of the business. CDI can revisit the argument at trial or in another motion, once the factual record is better fleshed out for the Court.

In conclusion, CDI's motion to exclude the expert testimony of Mr. Filler is denied.

3. Denron's Motion for Protection and Funds for Fees

The parties dispute how to properly characterize Denron's motion for protection. Dennis claims that the motion seeks nothing less than a mandatory preliminary injunction and is thus subject to the procedural strictures of *Dep't of Envmnt'l Protec. v. Emerson*, 563 A.2d 762, 768 (Me. 1989) and M.R. Civ. P. 65(b). Denron claims that the relief requested in its motion is

explicitly authorized by 13-C M.R.S. § 1434(2)(C), removing the request from the legal test for entitlement to preliminary mandatory injunctive relief. Nonetheless, Denron effectively concedes in reply that if the standard for a mandatory preliminary injunction is applied then it cannot satisfy that test. (Denron Reply Br. 3-4.)

13-C M.R.S. § 1434 is titled "Discretion of Court to Grant Relief Other than Dissolution." Subsection 2 provides as follows:

> On the application of a plaintiff or any other shareholder or on the court's own motion in any action filed by a shareholder to dissolve a corporation on any of the grounds enumerated in section 1430, subsection 2, or on the court's own motion in any other action to dissolve a corporation, the court may make an order or grant relief, other than dissolution, that in its discretion it considers appropriate . . . .

Subsection C specifically authorizes the Court to enter an order "[d]irecting or prohibiting any act of the corporation or shareholders, directors, officers or other persons party to the action[.]" 13-C M.R.S. § 1434(2)(C). The prefatory language to subsection 2 suggests that the "relief other than dissolution" is contemplated as a remedy to be imposed after a party has prevailed in its dissolution action. *See* 13-C M.R.S. § 1430(2). There is nothing in the statute to suggest that a plaintiff or other shareholder is entitled to the relief contemplated while the dissolution action is pending and before the statutory elements of judicial dissolution have been proven. Denron cites no authority where section 1434(2) was construed so broadly as to entitle a plaintiff shareholder to preliminary relief.

Functionally, the relief requested is injunctive. As Dennis points out, the law regarding preliminary injunctions is quite well-developed and explicitly provided for in Maine's Rules of Civil Procedure. *See* M.R. Civ. P. 65(b). A party must meet a four-factor test to prevail on a motion for a preliminary injunction, and the test is enhanced where mandatory injunctive relief is sought. *See Dep't of Envmnt'l Protec.*, 563 A.2d 762, 768. Given the absence of authority construing

7

section 1434(2) as abrogating the usual test for preliminary injunctive relief,[3] or anything in the plain language of the statute suggesting such a construction, and considering the well-developed jurisprudence of preliminary injunctive relief generally, the Court concludes that Denron's motion must be treated as a motion for a preliminary mandatory injunction. Because Denron has conceded that it cannot satisfy that test, or at the very least, has declined to raise any argument with respect to that test, the Court denies Denron's motion for protection and funds for fees. This ruling is without prejudice to Denron seeking contribution or indemnification from Dennis for any funds that it maintains were wrongfully withheld, or for any other ultra vires actions or abstentions by Dennis as Denron's treasurer that Denron sought to compel Dennis to comply with in the instant motion. The Court expresses no opinion as to the legal merits of Denron's complaints about Dennis's actions as treasurer during the pendency of this lawsuit.

4. The Application of Fourth-Generation Shareholders for Relief other than Dissolution

The Fourth-Generation Shareholders likewise invoke 13-C M.R.S. § 1434(2) in support of their motion, which likewise functionally seeks preliminary injunctive relief: an order validating the creation of a third board seat for the Fourth-Generation Shareholders that was purportedly approved by majority vote of CDI's shareholders in December 2014. Ronald opposes essentially on the same grounds as Dennis in the motion described above: that the Court cannot order any "relief other than dissolution" until a plaintiff has prevailed in its dissolution action. *See* 13-C M.R.S. § 1430(2). However, Ronald characterizes the Fourth-Generation Shareholders' motion as one for partial summary judgment as opposed to one for preliminary injunction.

---

[3] Alternatively, the Court would exercise its discretion and deny Denron's motion even if section 1434(2) authorized the preliminary injunctive relief Denron seeks in its motion. There is little authority construing what a party must show to be entitled to relief under the section and the plain text provides that the Court's authority to enter an order is discretionary in any event. 13-C M.R.S. § 1434(2). Some minimal, preliminary factual record must be before the Court before it can order the extraordinary relief of a mandatory preliminary injunction, even if it were allowed under the statute.

As attractive and pragmatic as the solution proposed by the Fourth-Generation Shareholders may be, the Court declines to diverge from its conclusion above that 13-C M.R.S. § 1434(2) contemplates a court ordering relief "other than dissolution" only once a plaintiff has proven that it is entitled to judicial dissolution. *See* 13-C M.R.S. § 1430(2). The primary argument of the Fourth-Generation Shareholders is that dissolution is not appropriate, and they further argue that ordering the disputed third director seat to be filled would mitigate the conflicts which gave rise to this litigation, which could in turn enable these profitable entities to continue. The solution they propose, however, must be denied on procedural grounds. The two motions brought pursuant to 13-C M.R.S. § 1434(2) demonstrate the danger inherent in a broad construction of the statute as allowing courts to order preliminary relief without satisfying the usual standard for such an extraordinary remedy: essentially, forcing the court into the role of receiver before a decision has even been reached on the ultimate issue of whether dissolution is appropriate or allowable under the statute. For these reasons, the Fourth-Generation Shareholders' motion must be denied, and the Court expresses no opinion on whether the third board seat was properly created.

CONCLUSION

Based on the foregoing, the entry will be:

1. Defendant Denron's motion for partial summary judgment on Count III is DENIED.

2. Defendant CDI's motion for partial summary judgment on Count III is DENIED.

3. Defendant CDI's motion to exclude expert testimony of Mark Filler is DENIED.

4. Defendant Denron's motion for protection and funds for fees is DENIED.

5. Intervenor's Fourth-Generation Shareholder's motion for relief other than dissolution is DENIED.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).


**Dated:**_____          _____
                                   **M. Michaela Murphy**
                                   **Justice, Business and Consumer Court**

**Dennis Barriault**

      **v.**

**Denron Inc.,**
**Ronald Barriault,**
**et al.**


| | |
|---|---|
| **Dennis Barriault** | George Dilworth, Esq.<br>Julia Pitney, Esq.<br>84 Marginal Way Suite600<br>Portland, ME 04101 |
| **Denron Inc** | Timothy Bryant, Esq.<br>One City Center<br>PO Box 9546<br>Portland, ME 04112-9546 |
| **Ronald Barriault** | Kurt Olafsen, Esq.<br>75 Pearl Street<br>Suite 215<br>Portland, ME 04101 |
| **Central Distributors, Inc.** | Daniel Nuzzi, Esq.<br>184 Main Stree<br>PO Box 3070<br>Lewiston, ME 04243-3070 |
| **Intervenors**<br>**Michael D. Barriault**<br>**Renee C. Barriault**<br>**Amy L. Barriault** | Timothy Norton, Esq.<br>John McArdle, Esq.<br>53 Exchange Street<br>PO Box 597<br>Portland, ME 4112 |

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & COUNSUMER
DOCKET NO. BCD-CV-17-39

RONALD F. BARRIAULT,                 )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        ORDER ON DENNIS BARRIAULT'S
                                     )        MOTION FOR COURT-APPOINTED
DENNIS A. BARRIAULT, et al.,         )        EXPERT
                                     )
        Defendants.                  )
                                     )
                                     )

Pending before the Court is Defendant Dennis A. Barriault's motion for court appointed

expert brought pursuant to M.R. Evid. 706. Defendant Central Distributors, Inc. ("CDI") joins

the motion in part.[1] Plaintiff Ronald Barriault and Counterclaim-Defendant Denron, Inc. oppose

the motion. The Court heard oral argument on the motion on August 6, 2018. Ronald Lebel, Esq.

appeared on behalf of Dennis;[2] Kurt Olafsen, Esq. appeared for Plaintiff Ronald; Daniel Nuzzi,

Esq. appeared for CDI; and Timothy Bryant, Esq. appeared for Denron.

## BACKGROUND

This case arises out of the ongoing dispute between Dennis and Ronald over the

management and directorship of two corporations. CDI is a Maine corporation with its principal

place of business at 15 Foss Road, Lewiston, Maine. (Pl's Compl ¶ 3.) CDI is a wholesale

distributor of beer, wine, and nonalcoholic drinks. (Pl's Compl. ¶ 4.) Denron was incorporated

by Dennis and Ronald on May 22, 1986 and is a Maine business corporation with a principal

place of business in Lewiston, Maine. (Def's Countercl. ¶¶ 3-4.) Denron owns the Foss Road

---

[1] CDI joins the motion, provided that it is not asked to contribute to the cost of such an expert. (CDI Resp. to Mot. 4.)
[2] Because the two individual parties share the same last name, the Court refers to them both by their first names throughout this Order.

1

property and leases it to CDI. (Pl's Compl. ¶ 7.) Ronald and Dennis each own 50% of the voting stock of Denron. (Pl's Compl. ¶ 8.)

In this case, *Barriault v. Barriault et al.*, original docket number BCD-CV-17-54,[3] Ronald is suing for, *inter alia*, judicial dissolution of CDI. (Pl's Compl. ¶¶ 43-47.) Dennis has counterclaimed for, *inter alia*, relief other than dissolution of CDI under 13-C M.R.S. § 1434. (Def's Countercl. ¶¶ 37-41.) William Howell conducted an expert valuation of CDI on behalf of CDI and produced a valuation report on April 6, 2018 in which he concludes that the fair value of the 100% shareholder interest in CDI was $10,295,000 as of December 31, 2017. (Def's Mot. for Ct. App. Exp. Witness ¶ 4.) Mark Filler conducted an expert valuation of CDI on behalf of Ronald and produced a valuation report in which he concludes that the value of a 100% shareholder interest in CDI as of December 31, 2017 was $30,207,200. (Def's Mot. for Ct. App. Exp. Witness ¶ 6.) Accordingly, the two experts engaged by the parties are $19,912,200 apart in their valuations of CDI. (Def's Mot. for Ct. App. Exp. Witness ¶ 8.)

## STANDARD OF REVIEW

"On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing." M.R. Civ. P. 706(a). "Although [M.R. Evid. 706] recognizes that the power of the trial judge to appoint an expert of his own choosing should exist, . . . that exercise of power in civil cases should be resorted to only in exceptional situations." M.R. Evid. 706 advisers' note to former rule 706, Feb. 1976. The trial court's authority to appoint an independent expert witness is discretionary.

---

[3] Dennis's motion is captioned under BCD-CV-17-39 consistent with the June 1, 2018 order consolidating this action with BCD-CV-17-54. CDI's valuation is at issue in the pleadings originally filed in BCD-CV-17-54.

2

*See In re Irene W.*, 561 A.2d 1009, 1012 (Me. 1989); *Villa v. Smith*, 534 A.2d 1310, 1312 (Me. 1987).

## DISCUSSION

Dennis argues that given the $19,912,200 disparity in the valuation between CDI's expert and Ronald's expert, the Court should exercise its discretionary authority and appoint its own expert to determine the fair value of a 100% shareholder interest in CDI. (Def's Mot. for Ct. App. Exp. Witness ¶ 9.) Ronald responds that the fact that the two experts have a substantial disagreement is not unusual in civil litigation and that the disagreement can be resolved by the factfinder without the need for an additional, independent expert. (Pl's Opp. Mot. for Ct. App. Exp. Witness 1.) Ronald further suggests that the difference in valuation in this case relates to primarily one issue—what type of potential buyer should be considered for purposes of determining value. (Pl's Opp. Mot. for Ct. App. Exp. Witness 1-2.) At the oral argument, Ronald explained that while one valuation assumes a "hypothetical buyer," *i.e.* a "financial buyer or investor," the other valuation assumes a "synergistic" or "strategic buyer" who is already in the industry and seeks a larger market share.

The Court agrees with Ronald that this case does not present an exceptional circumstance warranting the court-appointment of an independent expert. *See* M.R. Evid. 706 advisers' note to former rule 706, Feb. 1976. The "dueling expert" situation is not uncommon, particularly with respect to valuations of a business in the context of dissolution or buyouts. "Granting the evils in the practice of shopping for experts and the partisanship or venality of some of them, there are serious questions about whether a court appointment is the wise remedy. It has the effect of leaving little of the traditional adversary system . . . ." Field & Murray, *Maine Evidence* § 706.3 at 419 (6th ed. 2007). To the extent that the experts offer inconsistent versions of the truth, it is

3

the role of the factfinder to determine which version is better supported and more credible. As the Adviser's Note to M.R. Evid. 706 explains, the appointment of a court-appointed expert runs the risk of abdicating that responsibility to the expert: "In any jury case the opinion of an expert known to be court appointed . . . would almost surely be given decisive weight. In a case tried without jury the judge who selected the expert could scarcely be expected by the parties not to adopt his opinion." M.R. Evid. 706 advisers' note to former rule 706, Feb. 1976.

Furthermore, at the oral argument, Ronald suggested that the determination of which expert's opinion is correct may turn on a question of law. As noted above, the difference between the two valuations can apparently be explained by the valuation method used by the expert. Ronald argued at the oral argument that the issue of which valuation method is consistent with Maine's Business Corporation Act's requirement that a shareholder's shares be appraised at "fair value" is a legal question within the purview of the Court. *See* 13-C M.R.S. §§ 1302, 1434(2)(A). Moreover, Dennis has suggested that the valuation method of Ronald's stock is dictated by a contract, the "CDI buy-sell agreement." (Def's Mot. for Ct. App. Exp. Witness ¶¶ 2-3, 9.) Ronald disagrees that the price for his stock must be determined under the CDI buy-sell agreement. (Pl's Opp. Mot. for Ct. App. Exp. Witness 2.) The factual and legal issues presented in contract construction are not issues which an independent business-valuation expert would be helpful in resolving. *See, e.g. Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989 (contract construction may present questions of both law and fact).

In sum, the experts' dispute as to the valuation of CDI presents both factual and legal issues within the purview of the factfinder or the Court, respectively. The court appointment of an independent expert would not be helpful in resolving them.

4

## CONCLUSION

Based on the forgoing it is hereby ORDERED:

That Defendant Dennis A. Barriault's motion for court appointed expert is DENIED.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: 9/-ᴌ/ɩ ʳ

M. Michaela Murphy
Justice, Business and Consumer Court

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & COUNSUMER
DOCKET NO. BCD-CV-17-39

DENNIS BARRIAULT,                )
                                 )
        Plaintiff,               )
                                 )
v.                               )    COMBINED ORDER ON PENDING
                                 )    MOTIONS
DENRON, INC., et al.,            )
                                 )
        Defendants.              )
                                 )
                                 )

Pending before the Court is Defendant Denron, Inc.'s motion to dismiss the amended complaint (the "Complaint") and Plaintiff Dennis Barriault's motion to compel discovery. The Court heard oral argument on the motion on November 5, 2018. Timothy Bryant, Esq. appeared for Denron and Kurt Olafsen, Esq. appeared for Party-in-Interest Ronald Barriault. Dennis[1] was represented by Toby Dilworth, Esq.

## BACKGROUND

Dennis and Ronald are brothers and former business partners who are the only directors, officers, and shareholders of Denron, each owning fifty-percent of Denron's shares. Ronald is Denron's president and Dennis is its treasurer. Dennis's Complaint principally seeks judicial dissolution of Denron based on allegations that Ronald hired a lawyer (Mr. Bryant) for the corporation without Dennis's knowledge or approval and directed Mr. Bryant to agree to a consent judgment between Ronald and Denron in a lawsuit that Ronald had filed against Denron to wrongfully procure direct personal control of up to $400,000 of corporate money. At the oral

---

[1] Ronald Barriault and Dennis Barriault are brothers who share the same last name. The Court therefore refers to them by their first names in the Order.

1

argument, the parties confirmed that $300,000 was disbursed in equal parts to Denron's two shareholders (Ronald and Dennis) and that $100,000 was deposited into a Denron bank account, although apparently only Ronald has the ability to draw on that account.

Denron now moves to dismiss the Complaint, principally on the grounds that it does not allege fraud by Denron with sufficient particularity. Dennis has brought a motion to compel discovery responsive to a prior request for communications between Ronald and Mr. Bryant (Denron's counsel); Denron objected to the request on the grounds that such correspondence is protected by attorney-client privilege.

### DISCUSSION

I. Motion to Dismiss

In reviewing a motion to dismiss under Rule 12(b)(6), the complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.* While general allegations are usually sufficient to satisfy this liberal pleading standard, our rules of civil procedure apply a heightened standard for pleading special matters, such as fraud. *See* M.R. Civ. P. 9. "In all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity." M.R. Civ. P. 9(b).

Dennis's two-count Complaint alleges, inter alia, that Ronald as president of Denron "is acting, or will act in a manner that is illegal, oppressive or fraudulent" as grounds for his request for judicial dissolution of Denron. (Pl's Compl. ¶ 5.b.) Denron has moved to dismiss the Complaint on the grounds that this allegation lacks the specificity demanded by M.R. Civ. P. 9(b). In his

2

written opposition, Dennis argues that because the Complaint does not plead fraud as a cause of action that Rule 9(b)'s heightened pleading requirement has no bearing on whether the Complaint should be dismissed for failure to state a claim pursuant to M.R. Civ. P. 12(b)(6). At the oral argument, Dennis further argued that the purpose behind Rule 9(b) is "to allow the defendant to be fairly apprised of the elements of the claim" and because Denron has actual knowledge of the fraudulent acts alluded to in the Complaint the Rule should not apply here. *See Stevens v. Bouchard*, 532 A.2d 1028, 1030 (Me. 1987) (citing 1 Field, McKusick & Wroth, *Maine Civil Practice*, § 9.2 at 221 (2d ed. 1970)). Denron responded that it has only a general understanding of Dennis's complaint of fraudulent behavior* and that Rule 9(b) entitles it to more specificity. Denron said it would not oppose a motion to amend the Complaint so that Dennis could state his allegations of fraud with specificity in order to allow Denron to adequately defend itself.

Dennis's argument misapprehends the scope of Rule 9(b) and Rule 12(b). First, Rule 9(b) applies to "all averments of fraud[,]" not only when fraud is pleaded as a stand-alone cause of action. M.R. Civ. P. 9(b). Second, a party's failure to meet the requirements of M.R. Civ. P. 9(b) is grounds for dismissal pursuant to M.R. Civ. P. 12(b). *See Barnes v. McGough*, 623 A.2d 144, 146 (Me. 1993) ("[B]ecause the plaintiffs have alleged that the defendants' conduct involved fraud, the provisions of M.R. Civ. P. 9(b) must also be considered in addressing the motion to dismiss."); *see also* 2 Harvey & Merritt, *Maine Civil Practice* § 9:2 at 384 (3d, 2011 ed.) ("[f]ailure to comply with the requirements of Rule 9(b) may ordinarily lead to a dismissal under 12(b) for failure to state a claim").

However, when a motion to dismiss is granted for failure to comply with Rule 9(b), "it would presumably be with leave to amend." *Id.*; *see* M.R. Civ. P. 15(a). At the oral argument,

---

* In particular, at the oral argument, Mr. Bryant expressed confusion as to whether the Complaint alleges fraud on the part of Denron, Ronald, or both.

3

Denron said it would not oppose a motion to amend brought by Dennis pursuant to such a dismissal without prejudice. The Court therefore grants Denron's motion to dismiss without prejudice.

## II.    Motion to Compel

On October 19, 2017, Dennis served requests for production of documents upon Denron and Ronald, including Request No. 2, which sought "[a]ll communications . . . between Ronald . . . and [Mr. Bryant] . . . [between] January 1, 2016 [to the present] relating in whole or in part to [*Barriault v. Denron*, No. BCD-CV-18-28] or any of the allegations contained in [Ronald's complaint] in that matter . . . ." (Pl's Mot. Compel Exs. A, B.) Denron and Ronald responded to other requests, but both refused to produce any documents in response to Request No. 2 on the grounds that the information requested was protected by the attorney-client privilege. This case was then stayed by court order until June 1, 2018. Following the dissolution of the stay the parties made good faith efforts to resolve the discovery dispute but were unable to reach a resolution.

"Parties may obtain discovery by . . . production of documents . . . ." M.R. Civ. P. 26(a). "Parties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action . . . if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." M.R. Civ. P. 26(b)(1) (emphasis added). Maine Rule of Evidence 502, "Lawyer-Client Privilege," provides that "A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of any confidential communication . . . [b]etween the client . . . and the client's lawyer . . . ." M.R. Evid. 502(b)(1). "The privilege may be claimed by . . . [any] agent authorized to act on behalf of a legal entity . . . such as a corporation . . . in legal matters or in obtaining the services of, or communicating with, an attorney for the entity. . . ." M.R. Evid. 502(c)(1)(D). "There is a presumption that the . . . lawyer . . . has authority to claim the privilege on the client's behalf." M.R. Evid. 502(c)(2). "The party

4

asserting the existence of the attorney-client privilege has the initial burden of demonstrating its applicability." *Harris Mgmt., Inc. v. Coulombe*, 2016 ME 166, ¶ 24, 151 A.3d 7. The burden then shifts to the party seeking to pierce the privilege to prove by a preponderance of the evidence that an exception applies. *See id.*

Dennis's first argument is that if Ronald is within the privilege, he is too, and can pierce or waive the privilege. Although the lawyer-client privilege protects communications between attorneys and corporations, *see* M.R. Evid. 502(c)(1)(D), the privilege does not protect the communications of every employee of the corporation with the corporation's attorney. Its scope is limited to members of the so-called "control group" of the corporation, that is, "'those officers, usually top management, who play a substantial role in deciding and directing the corporation's response to the legal advice given,' and other individuals who have 'sufficient authority to make decisions for the client[.]'" *Harris Mgmt. v. Coulombe*, 2016 ME 166, ¶ 15, 151 A.3d 7 (quoting *United States v. Upjohn Co.*, 600 F.2d 1223, 1226 (6th Cir. 1979), rev'd, 449 U.S. 383); Advisers' Note to former M.R. Evid. 502 (Feb. 2, 1976)).

Ronald and Denron do not necessarily dispute that Dennis, as an officer and director of Denron, is a member of the "control group." However, Ronald and Denron claim that Dennis is adverse to Denron in this lawsuit and therefore cannot waive the lawyer-client privilege on Denron's behalf in order to obtain a strategic advantage against it. *See Chambers v. Gold Medal Bakery, Inc.*, 983 N.E. 2d 683, 693 (Mass. 2013) (citing *SBC Interactive Inc. v. Corp. Media Partners*, No. 15987, 1997 Del. Ch. LEXIS 170, at *18 (Dec. 8, 1997) ("The principle that directors have a right of equal access to advice of corporate counsel provided to the corporation is based on the assumption that the interests of the directors are not adverse to interests of the corporation on a given issue.")

5

In *Chambers*, the court did not hold that the directors (who were also shareholders) were adverse merely because they were suing the corporation, but rather concluded more narrowly that in the context of that case "there [was] sufficient evidence, at least narrowly with respect to the . . . present litigations, that the plaintiff's interests [were] adverse to [the corporation]." *Id.* at 694. In particular, the court noted that the plaintiffs had brought multiple suits directly against the corporation over a short span of time, were represented by their own counsel throughout that period, and their motives were self-interested because their goal in accessing the privileged information was to maximize their share price in a corporate buy-back. *Id.* Although Dennis's motive for obtaining the privileged communications are different in this case, his adversity to Denron is even more pronounced than that of the plaintiffs in *Chambers*: Dennis's ultimate goal in this suit is a judicial dissolution of Denron. (*See* Am. Compl. ¶¶ 5-6.) The Court therefore concludes that regardless of whether Dennis is part of Denron's "control group," Dennis's interests are adverse to Denron in this lawsuit and therefore Dennis is not entitled to pierce the lawyer-client privilege between Ronald and Denron.

Dennis next argues that the "crime-fraud exception" to the lawyer-client privilege vitiates any privilege between Ronald and Denron. "An opposing party seeking to show that the crime-fraud exception to the attorney-client privilege applies . . . has the burden to prove, by a preponderance of the evidence, that (1) the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place and (2) the communications were intended by the clients to facilitate or conceal the criminal or fraudulent activity." *Harris Mgmt., Inc.*, 2016 ME 166, ¶ 24, 151 A.3d 7. The Court concludes that Dennis has failed to carry his burden.

6

In support of his argument, Dennis relies on his "detailed allegations that Ronald perpetrated a fraud upon the Court" and "documentary evidence" that consists of memoranda he previously filed in *Barriault v. Denron*, No. BCD-CV-18-28: his verified motion for joinder and for relief from judgment and his reply memorandum to Ronald's opposition to that motion. (Pl's Mot. Compel 7.) As noted above, Dennis's allegations in this lawsuit lack the particularity demanded by M.R. Civ. P. 9(b); furthermore, allegations of fraud are not evidence of fraud.

Furthermore, the "documentary evidence" referenced in Dennis's motion does not prove by a preponderance of the evidence either that (1) Ronald was planning any fraudulent or criminal activity when he communicated with Mr. Bryant or (2) that Ronald intended any such communications to facilitate or conceal fraudulent or criminal activity. *See Harris Mgmt., Inc.*, 2016 ME 166, ¶ 24, 151 A.3d 7. The Court acknowledges that Dennis strongly disagrees with Denron's decision to consent to judgment in BCD-CV-18-28 and make the distribution sought by Ronald. However, as "the officer designated as president[,]" Ronald had the statutory authority "to institute or defend legal proceedings" given the deadlock between the two director/shareholders on the issue of the distribution. 13-C M.R.S. § 842(2). Dennis has established, at most, that he was not apprised of that litigation. This is insufficient to prove that the crime-fraud exception applies.

Finally, Dennis argues that he "does not seek communications between Denron and its counsel" but rather "communications between Ronald Barriault and Denron's counsel . . . there can be no privilege between the Plaintiff in that lawsuit [Ronald] and the attorney for the Defendant." (Pl's Mot. Compel 7.) However, the requested communications were between Ronald in his capacity as president of Denron and Mr. Bryant, not between Ronald in his individual capacity and Mr. Bryant. Corporations can only act through human beings, and as president, Ronald was the human being with the statutory authority to act as Denron's representative in the

7

litigation. 13-C M.R.S. § 842(2). It is in this capacity that he has invoked the lawyer-client privilege. M.R. Evid. 502(c)(1)(D). Dennis cites no authority suggesting that Ronald's participation in the litigation as an individual is enough to defeat Denron's assertion of the lawyer-client privilege with respect to communications between Ronald, in his capacity as Denron's president, and Denron's counsel.*

## CONCLUSION

Based on the foregoing it is hereby ORDERED:

1. Denron's motion to dismiss is GRANTED without prejudice.

2. Plaintiff Dennis's motion to compel is DENIED.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: 12/6/18

M. Michaela Murphy
Justice, Business and Consumer Court

Entered on the Docket: 12/6/18
Copies sent via Mail___ Electronically ✓

---

* At the oral argument, Dennis for the first time raised the argument that because Ronald's interests were adverse to Denron's in No. BCD-CV-18-28 that Ronald's communications were thus not protected by lawyer-client privilege under the rule from *Chambers* discussed above. 983 N.E. 2d at 693. "[A]bsent extraordinary circumstances, arguments raised for the first time at oral argument are waived[.]" *Laqualia v. Laqualia*, 2011 ME 114, ¶ 16 n.6, 30 A.3d 838 (citing *United States v. Pulido*, 566 F.3d 52, 60 n.4 (1st Cir. 2009)); *see also Chadwick-BaRoss, Inc. v. Martin Marietta Corp.*, 483 A.2d 711, 717 (Me. 1984) ("Generally, an issue not addressed by the brief of either party and raised at oral argument is viewed as waived . . . .").

8